IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARQUITTA WOODS<br><br>                           Plaintiff<br>v.<br><br>THE CHILDREN'S HOSPITAL OF PHILADELPHIA ("CHOP")<br><br>                           Defendant | Civil Action No. <u>2:25-cv-6186</u><br><br><br><br>**PLAINTIFF DEMANDS<br>A TRIAL BY JURY** |

**COMPLAINT**

Plaintiff, Marquitta Woods (hereinafter referred to as "Plaintiff"), by and through her attorneys, The Derek Smith Law Group, PLLC, allege and aver as follows:

**NATURE OF THE CASE**

1. This case arises out of unlawful employment discrimination and retaliation against, Plaintiff, Marquitta Woods, an African American female with disabilities, including fibromyalgia, depression, Post Traumatic Stress Disorder ("PTSD"), and anxiety, for which her former employer Defendant, Children's Hospital of Philadelphia ("CHOP"), disparately treated, discriminated against, retaliated against, and wrongly terminated from employment.

2. Plaintiff was a qualified Case Manager Support Specialist for Defendant CHOP, but after taking a leave of absence and having requested reasonable accommodation, Defendant CHOP, changed Plaintiff's job duties, issued her discipline, and terminated her employment.

3. Defendant CHOP treated Plaintiff less favorably than similarly situated individuals outside Plaintiff's protected classes, and, on information and belief, replaced Plaintiff with a person or persons outside her protected classes.

1

4. Plaintiff asserts claims for disability discrimination, failure to accommodate, failure to engage in the interactive process in good faith, and retaliation under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101, *et. seq.*, interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq.*, and similar violations under the Pennsylvania Human Relations Act ("PHRA"); 43 P.S. § 951, *et. seq.*

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the matter under 28 U.S.C. § 1331 and § 1343, because Plaintiff asserts claims arising under federal law. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

6. Venue is proper in this District under 28 U.S.C. § 1391 because all events giving rise to this action occurred in the Eastern District of Pennsylvania and Defendant resides and conducts business in the Eastern District of Pennsylvania.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff has fully exhausted administrative remedies, placed Defendant CHOP on notice of all claims against, and afforded Defendant CHOP reasonable opportunity to conciliation before having filed and initiated this litigation. Specifically, on October 19, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") (Charge No. 530-2024-05690) alleging disability discrimination and retaliation. On February 3, 2025, Plaintiff filed a Supplemental Charge adding claims of race discrimination and naming individual respondents. On August 7, 2025, the EEOC issued Plaintiff a Right to Sue. Plaintiff brings this action within ninety (90) days of receipt of the Right to Sue and more than one year after filing of the initial Charge. Plaintiff

2

further files this complaint within two (2) years of Defendant CHOP's alleged Family and Medical Leave Act violations. As such, Plaintiff has administratively exhausted and timely filed all claims.

## THE PARTIES

8. Plaintiff, Marquitta Woods, is an adult female individual and resides in Philadelphia, Pennsylvania, and at all times relevant was employed by Defendant CHOP.

9. Defendant, Children's Hospital of Philadelphia ("CHOP")(hereinafter "Defendant" or "Defendant CHOP"), is a Pennsylvania nonprofit corporation employing well over fifteen (15) employees and engaged in interstate commerce and, at all times relevant, was Plaintiff's employer.

10. At all relevant times, Defendant CHOP agreed, accepted, acquiesced, adopted, and/or otherwise is/was bound by the actions, omissions, and conduct of Defendant CHOP's executives, officers, managers, supervisors, and employees including Noelle Heavey, Michelle Palmer, Jay Alston, James Jackson, and Nayo Howard.

## SUMMARY OF MATERIAL FACTS

11. Defendant CHOP hired Plaintiff on or about December 2, 2021, as a full-time Case Manager Support Specialist and at the time of her termination, she earned $64,000 annual salary.

12. Plaintiff performed her job for Defendant CHOP as a full-time Case Manager Support Specialist competently and was therefore qualified as an employee of Defendant CHOP.

13. It is believed and therefore alleged that prior to August of 2023 Plaintiff had a good performance history working for Defendant CHOP and essentially no discipline.

14. Before August of 2023, Plaintiff was afforded the opportunity to work from home, which was granted by her supervisor, Noelle Heavey.

15. In August of 2023, Plaintiff needed emergency surgery and immediately notified Defendant CHOP of her need for leave for the surgery and post-surgical recovery.

3

16. Defendant CHOP approved Plaintiff's leave request, which included an approved leave of absence under the Family and Medical Leave Act ("FMLA").

17. Plaintiff had utilized intermittent FMLA up to that point for ongoing issues related to Plaintiff's disabilities.

18. As noted, Plaintiff suffers from mental health and physical conditions and ailments that substantially impair her ability to perform everyday activities—fibromyalgia, depression, PTSD, and anxiety—which affect her focus, concentration, pain levels, stamina, work, and related activities.

19. At all times relevant, Defendant CHOP employees knew of these conditions.

20. Plaintiff's leave of absence that was related to the surgery stretched from August of 2023 through to about January of 2024, as Plaintiff had residual conditions that required her to apply for Short Term Disability and take an extended leave of absence.

21. Before Plaintiff's returned to work, and thus before her leave expired, Plaintiff petitioned Defendant CHOP for a reasonable accommodation so that Plaintiff could manger her work and continue to work; an accommodation asking for periodic remote work.

22. Plaintiff supported her need for accommodation with doctor's notes.

23. Plaintiff submitted her request for accommodation through appropriate channels.

24. Defendant CHOP denied the request, despite it not causing an undue hardship.

25. Despite Plaintiff having repeatedly checked in with Noelle Heavey, Michelle Palmer, and other Defendant CHOP's employees about her accommodation request, there was no good faith interactive process initiated by Defendant CHOP prior to the denial.

26. Plaintiff alleges and believes Defendant CHOP had moved-on from her during her leave of absence and the onset of what Defendant CHOP regarded as a serious disability.

27. After her return from leave and request for accommodation, Defendant CHOP changed, added, and/or altered Plaintiff's job responsibilities by having included an unfavorable tasks and responsibility of work directly with patients at the clinic.

28. Plaintiff had not been trained for clinic-based assignments and this was previously not a job responsibility.

29. Plaintiff maintains that this change in her material job responsibilities was an adverse act and/or added to Plaintiff's work as a reason to deny her accommodation request.

30. Plaintiff continued to work hard and perform qualified services after her return to work and despite difficulty with Defendant having denied her accommodation request.

31. Defendant CHOP, however, had turned difficult on Plaintiff by and through supervisor, overly critical of Plaintiff's work and unusually inclined to discipline.

32. In March 2024, Plaintiff requested days-off.

33. Plaintiff had a Court related event and, on information and belief, Plaintiff required time and days off from work pertaining to her disability and/or conditions.

34. Defendant refused Plaintiff this leave and as a result, Plaintiff received discipline on March 4, 2024 (Level 3: Written Warning) and again March 8, 2024 (Level 4: Final Warning).

35. These disciplinary actions were unwarranted and pretext in furtherance of discrimination, retaliation, and/or wrongful conduct.

36. Defendant denied Plaintiff leave and accommodation, which proximately resulted in the write-ups.

37. Defendant's discipline was unusually harsh and similarly situated individuals outside Plaintiff's protected classes were treated more favorably.

38. Defendant then further assigned Plaintiff with assembling patient backpacks, and administering surveys in the clinic, which were new and previously unrequired job task/duties.

39. Plaintiff was extremely busy and asked coworkers to deliver the backpacks while Plaintiff continued to assemble and maintain this assignment along with her other assignments.

40. On information and belief, the coworkers delivered the backpacks.

41. Plaintiff alleges that while Defendant CHOP assigned her new and previously not necessary job duties; Defendant CHOP had not done the same for similarly situated individuals outside Plaintiff's protected classes and/or who/whom/that did not take protected activity.

42. On April 29, 2024, Noelle Heavey and Michelle Palmer called Plaintiff into a meeting and accused Plaintiff of insubordination and terminated Plaintiff.

43. Defendant CHOP claimed that Plaintiff refused to deliver backpacks.

44. Plaintiff disputes this claim as untrue and a fabrication, and actually Defendant CHOP had sought to terminate Plaintiff for any reason to replace her with a non-disabled individual and/or for Plaintiff's protected activities.

45. On information and belief, the backpacks were delivered by coworkers.

46. Defendant terminated Plaintiff in furtherance of disability discrimination and/or retaliation for her request for accommodation and exercise of FMLA rights.

47. Defendant treated similarly situated individuals outside Plaintiff's protected classes more favorable.

48. Plaintiff f alleges and avers that a Jawanda Hargrove, a Patient Representative, was permitted remote work, but not Plaintiff.

49. Defendant subjected Plaintiff to heightened scrutiny and retaliatory discipline.

50. As a result of Defendant CHOP's actions, Plaintiff has economic damages.

51. As a result of Defendant CHOP's actions, Plaintiff has endured severe emotional distress, humiliation, anxiety, loss of reputation, and loss of enjoyment of life.

52. Defendant CHOP replaced Plaintiff with a person or persons outside her protected classes.

**COUNT ONE**
**Disability Discrimination**
*Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.*

53. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

54. Defendant CHOP must abide by the Americans with Disabilities Act as it is an employer and has the requisite number of full-time employees and affects interstate commerce such that Federal laws apply.

55. Plaintiff is a qualified individual with a disability under the ADA as she suffers from conditions that substantially affect or limit her ability to do everyday activities including work, focus, stand, walk, concentrate, and others and yet Plaintiff was capable of performing the essential functions of her job with, or without, reasonable accommodation.

56. Defendant knew about Plaintiff's disability and her need for accommodation.

57. Alternatively, Defendant regarded Plaintiff as disabled.

58. Defendant discriminated against Plaintiff because of her disability by denying her accommodation, assigning her new job duties and responsibilities, failing to train, disciplining, and then terminating her from employment.

59. Defendant CHOP treated similarly situated individuals outside Plaintiff's protected class more favorable.

60. Defendant' actions violate 42 U.S.C. § 12112(a).

7

61.     As a direct and proximate result of Defendant CHOP's violation of the ADA, Plaintiff has suffered economic damages, emotional damages, compensatory damages, equitable damages, and Plaintiff seeks all relief available including attorney's fees, costs, and punitive damages for Defendant CHOP's willful, reckless, and intentional violation of Plaintiff's Federal rights under the ADA.

## COUNT TWO
### Failure to Accommodate / Failure to Engage in the Interactive Process
*Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.*

62.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

63.     Defendant CHOP must abide by the Americans with Disabilities Act ("ADA") as it is an employer and has the requisite number of full-time employees and affects interstate commerce such that Federal laws apply.

64.     Plaintiff is a qualified individual with a disability under the ADA as she suffers from conditions that substantially affect or limit her ability to do everyday activities including work, focus, stand, walk, concentrate, and others and yet Plaintiff was capable of performing the essential functions of her job with, or without, reasonable accommodation.

65.     Plaintiff requested reasonable accommodation to work from home, or other relief, which would not have caused Defendant CHOP undue hardship.

66.     Plaintiff followed all steps to reasonably request the accommodation.

67.     Plaintiff provided medical records to support her need for accommodation.

68.     Defendant CHOP refused to engage in the interactive process in good faith.

69.     Defendant CHOP wrongly denied Plaintiff accommodation when it would not have caused Defendant CHOP an undue hardship to provide the accommodation.

70.     Defendant CHOP's conduct violates 42 U.S.C. § 12112(b)(5).

71. Defendant CHOP's refusal to accommodate Plaintiff resulted in her termination.

72. As a direct and proximate result of Defendant CHOP's violation of the ADA, Plaintiff has suffered economic damages, emotional damages, compensatory damages, equitable damages, and Plaintiff seeks all relief available including attorney's fees, costs, and punitive damages for Defendant's willful, reckless, and intentional violation of Plaintiff's Federal rights under the ADA.

## COUNT THREE
### Retaliation
*Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.*

73. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

74. Plaintiff engaged in protected activity when she requested accommodation.

75. Plaintiff engaged in protected activity when she took a leave of absence.

76. Defendant retaliated against Plaintiff by denying accommodation, issuing write-ups, changing her material job responsibilities and duties, and terminating her employment.

77. A causal connection exists between Plaintiff's protected activity and the adverse actions, as shown by the close temporal proximity between the protected activity and Defendant CHOP's adverse employment actions.

78. Alternatively, a causal connection exists between the protected activity and adverse employment actions as demonstrated through a series of antagonism and animus towards Plaintiff including changes to work, denial of leaves, write-ups, discipline, performance reviews, and ultimately termination.

79. Defendant CHOP's actions violate 42 U.S.C. § 12203.

80. As a direct and proximate result of Defendant CHOP's violation of the ADA, Plaintiff has suffered economic damages, emotional damages, compensatory damages, equitable

9

damages, and Plaintiff seeks all relief available including attorney's fees, costs, and punitive damages for Defendant's willful, reckless, and intentional violation of Plaintiff's Federal rights under the ADA.

## COUNT FOUR
### Interference and/or Retaliation
*Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq.*

81. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

82. Defendant CHOP is an entity employing more than 50 full-time employees over the course twenty calendar weeks in a year and affecting interstate commerce such that it is required to afford employees up to 12 weeks, 60 days, or 480 hours of unpaid leave time under the Family and Medical Leave Act ("FMLA").

83. Plaintiff is/was an employee of Defendant CHOP and had worked for more than 12-months and had worked 1250 hours in the preceding 12 months such that she was eligible for leave under the FMLA.

84. Plaintiff utilized FMLA leave intermittently with regard to her disabilities and then for continuous leave beginning in August of 2023 related to a serious health condition (surgery) and residual difficulties preventing and prohibiting her from a return to work.

85. Defendant retaliated against Plaintiff for her exercise of FMLA rights by having changed job responsibilities, assigned new work, discipline, and terminated her employment.

86. The temporal proximity and/or series of animus and antagonism following Plaintiff's leave create a causal connection between her leave and adverse employment action.

87. Defendant CHOP interfered with Plaintiff's access to FMLA leave in 2024 by not renewing or taking appropriate action when it was clear that Plaintiff required ongoing leave.

88. Defendant CHOP's reasons for its/their actions are pretextual.

89. Defendant CHOP violated 29 U.S.C. § 2615(a)(2).

90. As a direct and proximate result of Defendant CHOP's violation of the FMLA, Plaintiff has suffered economic damages, out-of-pocket expense, and liquidated damages.

## COUNT FIVE
### Disability Discrimination, Failure to Accommodate, and Retaliation
*Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq.*

91. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

92. Defendant CHOP is subject to the Pennsylvania Human Relations Act ("PHRA") as it employs sufficient Commonwealth of Pennsylvania citizens, it resides in Pennsylvania, and otherwise Defendant CHOP is subject to the PHRA.

93. Plaintiff is protected under the PHRA as an employee of an employer and Plaintiff has further protection in her disability.

94. Defendant CHOP discriminated against Plaintiff because of her disability.

95. Defendant CHOP denied her reasonable accommodation and failed to engage in the interactive process in good faith.

96. Defendant CHOP retaliated against Plaintiff for requesting accommodation and opposing discrimination.

97. Defendant CHOP retaliated against Plaintiff for having been afforded an accommodated leave of absence.

98. Defendant CHOP treated similarly situated individuals outside Plaintiff's protected class more favorably.

99. Defendant CHOP replaced Plaintiff with persons outside her protected class.

100. As a direct and proximate result of Defendant CHOP's violation of the Pennsylvania Human Relations Act, Plaintiff has suffered economic damages, emotional damages,

compensatory damages, equitable damages, and Plaintiff seeks all relief available including attorney's fees and costs.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Marquitta Woods, respectfully requests that this Court enter judgment in her favor and against Defendant, Children's Hospital of Philadelphia, and award her all remedies available under law, including back pay, front pay, lost benefits, and other economic damages, compensatory damages, pain, suffering, emotional distress, humiliation, and loss of reputation, loss of enjoyment of life, liquidated damages, punitive damages, attorney's fees, costs, interest, equitable relief, reinstatement, and any and all other relief permitted under law and/or deemed necessary and just by the Court.

DEREK SMITH LAW GROUP, PLLC

*/s/ Christopher J. DelGaizo, Esq.*
CHRISTOPHER J. DELGAIZO, ESQ.
*Counsel for Plaintiff*

*Attorney I.D. No. 200594*
1628 Pine Street,
Philadelphia, PA 19103
Tel: (267) 857-7337
Cell: (610) 844-1779
Fax: (215) 501-5911
Email: Chris@dereksmithlaw.com

Dated: October 30, 2025